IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF KANSAS

Robert Walker Jr

                                   Plaintiff

v.

Jill R. Gillett, in her individual capacity
*
Eric Watts, in his individual capacity                Case No.   6:24-cv-1155
*
Amy Bliss, in her individual capacity
*
John Walker, in his official capacity as
Sheriff of Elk County, Kansas

                                   Defendants

**VERIFIED COMPLAINT**

**INTRODUCTION**

1. This is a civil rights action seeking damages for the violation of the plaintiff Robert Walker Jr's First, Fourth, and Fourteenth Amendment rights, stemming from the Elk County Sheriff's Department deputy Amy Bliss' confrontation of Mr. Walker on June 27, 2023, while Mr. Walker was standing alone outside the Elk County courthouse in Howard, Kansas, waiting for his wife to come out. Deputy Bliss had been contacted by the Sheriff's dispatcher inside the Sheriff's office behind the Courthouse. Mr. Walker had walked into the Sheriff's office and spoke to Dispatcher Stobaugh who, at all times, remained secure in her office area behind plexiglass. Mr. Walker spoke to Stobaugh through the plexiglass slit and asked to see the Sheriff – who is a relative of Mr. Walker – about why people attempting to enter the Courthouse building next door were first required to give a name and then where in the building they intended to go. The dispatcher called Deputy Bliss because she said Mr. Walker slammed a door on his way out of the building (which was not true) after being told by Stobaugh the Sheriff wasn't available.

1

2. Mr. Walker returned to the front of the Courthouse where he waited for his wife to exit. Defendant Bliss then took vindictive and retaliatory actions against Mr. Walker while he stood alone quietly outside the building when he rebuffed her questions.  Defendant Bliss, being offended and angry, then decided to punish Mr. Walker for his speech toward Bliss and arrested him claiming Mr. Walker was engaging in disorderly conduct because of his comments to Bliss which were considered offensive to Bliss but were not fighting words or speech that was threatening to Bliss' physical safety.

3. Deputy Amy Bliss improperly, deliberately, and repeatedly escalated her confrontation of Mr. Walker because of Mr. Walker's protected and non-threatening speech made in her presence.

4. The inability of defendant Bliss to listen to speech she found unpleasant and uncomplimentary erupted Bliss's knee-jerk angry snap decision to arrest Mr. Walker ultimately resulting in another improper use of force upon Mr. Walker by defendant Eric Watts and Bliss later at the Sheriff's office where Mr. Walker was choked, while handcuffed with his hands behind his back, because Mr. Walker didn't want to sit down and then offended Defendant Watts with his speech.

5. Mr. Walker was arrested without warrant on Tuesday, June 27, 2023. In Elk County, a defendant is brought before a Magistrate within 48 hours of the arrest and a Magistrate judge was available in Elk County on Wednesday and Friday.

6. The Elk County Sheriff's Department and Prosecutor Gillet then further retaliated and punished Mr. Walker by keeping him in jail six days by not bringing Mr. Walker before a Magistrate Judge until Monday, July 3, 2023, when his bond was set, and he bonded out.

7. Mr. Walker should have never been detained and could have been brought before a Magistrate Judge sooner that July 3, 2023.

**8.** Despite having the witness statement, deputy statements, and the videos of the arrest and uses of force against Mr. Walker, indicating no probable cause, the County prosecutor charged him in EK-2023-CR-000029 under K.S.A. 21-6203 (Disorderly Conduct) stating Mr. Walker was "yelling and making a scene" which neither constitutes elements of a Disorderly Conduct charge.   The prosecutor also charged Mr. Walker with Interference with Law Enforcement and Battery on Law Enforcement Officers which there was no probable cause.

## JURISDICTION AND VENUE

9. This civil rights action raises federal questions under the United States Constitution, particularly the First, Fourth, and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C.§ 1983.

10. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1346, as this action challenges the defendants' violation of the plaintiff's civil rights pursuant to 42 U.S.C. § 1983.

11. Venue lies in this Court pursuant to 28 U.S.C. § 1391, as a substantial part of the event and omissions giving rise to the claims occurred in this judicial district.

### THE PARTIES

12. Plaintiff Robert Walker Jr is a natural person, citizen of Kansas, and legal resident of Elk County, Kansas.

13. The Sheriff's Department of Elk County was at all times relevant to this Complaint responsible for its employees, including the employees of Elk County Sheriff Department. The Sheriff's Department of Elk County is charged under the law with the duty of hiring, supervising, training, disciplining, and establishing policy such that the conduct of its employees will conform to the Constitutions and laws of the State of Kansas and of the United States of America.

14. At all times relevant to this cause, Defendant Officers either acted in conformance with policy pertaining to, among other things, investigation, arrests, and use of force, as set by Elk County Sheriff Policy, as well as acting within the course and scope of their employment or did not act in conformance due to lack of training and oversight.

15. Amy L. Bliss was employed by the Elk County Sheriff's Department at the time described in this Complaint. Defendant Bliss is sued in his individual capacity.

16. Eric Watts was employed by the Elk County Sheriff's Department at the time described in this Complaint. Defendant Watts is sued in his individual capacity.

17. Jill R. Gillett was employed by Elk County as a prosecutor at the time described in this Complaint. Defendant Gillett is sued in her individual capacity.

18. John Walker is the sheriff of Elk County.  Defendant Walker is sued in his official capacity.

**FACTS**

19. At the time of the events in question, it was clearly established that an Elk County Deputy may not use force on Mr. Walker because she doesn't like his speech or because he doesn't want to sit during booking while handcuffed. *See Newman v. Guedry*, 703 F.3d 757, 761-64 (5th Cir. 2012) (objectively unreasonable for officers to injure a man whose "behavior [does] not rise to the level of active resistance").

20. Mr. Walker was not trespassing or acting unlawful at any time and the defendants did not have a reasonable suspicion to detain Mr. Walker.

21. Mr. Walker's purported lack of cooperation or lack of response to defendant Bliss's statements or questions at the Elk County courthouse does not factor into any reasonable suspicion analysis. *Schreiner v. Hodge*, 315 Kan. 25, 504 P.3d 410, 419 (2022); *State v. Andrade-Reyes*, 309 Kan. 1048, 1057, 442 P.3d 111 (2019).

4

22. Mr. Walker has a Fourth Amendment right to be free from an unreasonable stop or seizure.

23. Mr. Walker never prevented any of the defendant deputies from performing their respective official duties as described in this Complaint.

24. Mr. Walker and his wife Mrs. Walker (Jennifer Walker) attempted to enter the Elk County office located in Howard, Kansas, in order to contact the tax office in the building regarding vehicle registration and tags. The building entrance has a camera which links to the Elk County Sheriff's dispatcher, who at the time was Summer Stobaugh. Stobaugh's obligations included washing inmate dishes.

25. Mr. Walker was with his wife Jennifer Walker at the entrance of the tax office building. No one else was present at the entrance. When they appeared at the front entrance door, the Sheriff dispatcher Stobaugh told both to identify themselves as a requirement to enter. Dispatcher Stobaugh told them unless they identified themselves and their destination in the building that they would not be allowed to enter.

26. Both Mr. Walker and Mrs. Walker objected saying neither should be required to do that in order to gain access and do business with the tax office. Mrs. Walker eventually gave in and identified herself and told the dispatcher Stobaugh she intended to go to the county vehicle office within the building. When the door opened, Mrs. Walker entered. Mr. Walker then went across the street to the Sheriff's office to speak to the Sheriff about Stobaugh's requirements to enter that building.

27. At no time was Mr. Walker brawling or fighting or disturbing an assembly, meeting or procession, not unlawful in its character.

28. At no time did Mr. Walker use fighting words, or said anything that was threatening to the physical safety of Stobaugh or anyone else within the Sheriff's office.

29. The dispatcher told Mr. Walker from behind the plexiglass that the Sheriff was unavailable. Mr. Walker left the Sheriff's office and walked back to the Courthouse front entry door to wait for his wife. At no time did Mr. Walker use fighting words, said anything that was threatening to the physical safety of anyone. Part of Stobaugh's duties also included contacting the Sheriff and speaking to citizens such as Mr. Walker. Nothing Mr. Walker did prevented Stobaugh from performing any of her duties.

30. Stobaugh contacted Deputy Bliss. Bliss said she was dispatched because the dispatcher said Mr. Walker had been yelling at her with profanities. Bliss later arrived and walked up to the front of the building where Mr. Walker was alone and standing quietly waiting for his wife.



31. When Bliss approached Mr. Walker she asked:

Bliss: "Do you need anything?"
Walker calmly responded: "Do I need you to come up here asking me if I do?"
Bliss: "Yeah. I do have a reason to ask."
Walker calmly and in a normal tone said words to the effect of leave me alone. After some back and forth Mr. Walker stated: "Just get your ass in your car and go fucking do it."
Bliss: "Stop sir or I will arrest you for disorderly. How does that sound?"

32. The video feed shows Mr. Walker at that point time in which he was calm but persistent in having Bliss leave him alone:



33. After Bliss threatened Mr. Walker with a disorderly conduct charge for cussing, Mr. Walker then responded to Bliss: "I would challenge that in court. I would love you to try that." Bliss responded: "OK. Because you're being disorderly." Mr. Walker calmly held out his hands and said "right here:"



Bliss: "You're being disorderly"
Walker: "Do you even know what disorderly is?"
Bliss: "Yes. You're looking at me and cussing at me."
Walker calmly stated: "And you can't be the complainant either, can you – moron."



Bliss: "Excuse you sir?"

> Walker: "I just said you're a fucking moron."
> Bliss: "Excuse you sir."
> Walker: "I said it again."

34. After Mr. Walker said that calmly there was a pause of some 3 seconds of silence.



35. Bliss then said "You know what? I will arrest you. You know what. You are under arrest for disorderly conduct." Mr. Walker held out his hands smiling:



36. Bliss said "Turn around place your hands behind your back." Mr. Walker calmy said "all right" and turned around:



37. The dialogue continued:

> Bliss: "Do you have any weapons on you or anything?"
> Walker: "I've got a pocket knife."
> Bliss: "Where's that pocket knife?"
> Walker: "It's in my front pocket and you can't get it."
> Bliss: "Oh, I can't get it? If I need to."
> Walker: "You better get your ass a fuckin' supervisor."

38. Bliss then called for her supervisor the Sheriff. While waiting the two continued to converse:

> Walker: "You roll up there and demanded shit wanted me to give my fucking driver's license."
> Bliss: "What are you talking about?"
> Walker: "Over by the fucking gravel quarry. Are you stupid and can't remember that either?"



39. The dialogue continued:

> Bliss: "No. I pull over a lot of people."
> Walker: "Yeah, I'm sitting there. Minding my own business. Why the fuck did you need my driver's license?"

Bliss: "So I can identify who you are."
Walker: "You don't need my driver's license.  Was there a fucking crime going on?"
Bliss: "I can ask for an ID from anybody."
Walker: "You're a fucking idiot. You need to take your ass back to fucking police academy for another six months."
Bliss: "I need you to take your pocket knife out of your pocket and turn around and place your hands behind your back."
Walker: "I already had my hands behind my back."
Bliss: "All right. Turn around and put your hands behind your back."
Walker: "Boy, you're a scary son of a bitch."
Bliss: "No. You're making me mad and put your hands behind your back."
Walker: "I hope you're recording all of this."

40. Bliss then handcuffed Mr. Walker and Bliss walked with Mr. Walker peacefully and put

Mr. Walker in her car. When they arrived at the Sheriff's Department across the street, Bliss

opened the booking room standing next to Mr. Walker who was still handcuffed:



41. Bliss said "sit right there." Mr. Walker said "don't push me."  Bliss said "Don't kick my

chairs."



42. Mr. Walker said "You pushed me into the chair you stupid lying bitch."

10

43. Mr. Walker sat in the chair: "What law was broken?" Bliss said "disorderly conduct" which was a misdemeanor offense. Mr. Walker said "I would like to see the recording of my disorderly conduct." Bliss said "at this point I don't know." Mr. Walker was completely compliant sitting in the chair. Mr. Walker sat in the chair while Bliss had something else on her mind other than booking Mr. Walker. She called for Deputy Watts and continued to stand with her hands on her hips talking to Mr. Walker.



44. While Mr. Walker was seated with his hands handcuffed behind his back, the defendant Watts then entered with a police dog.



45. Bliss told Mr. Walker: "I want to introduce you to Deputy Watts." Bliss told Watts "he is being arrested for disorderly conduct":



46. Mr. Walker looked at Bliss and told her "You can fuck off."  Watts became angry and pointed at Mr. Walker.  Mr. Walker said "What are you fucking going to do?"  Watts glared at Mr. Walker pointing and saying "You can shut your fucking mouth."



47. Mr. Walker said "you shut the fuck up" and leaned forward with his hands still handcuffed behind his back.



48. Mr. Walker posed no threat; he never threatened harm to himself or others.  He never attempted to leave.  There was no reason to believe he posed any immediate threat to anyone.

49. Mr. Walker did not make any movements toward either deputy.  Mr. Walker stood with his hands handcuffed behind his back. Suddenly, defendant Watts lunged at Mr. Walker angrily with his cheeks puffed with one hand clenching while the other was turned into a fist:





50. Defendant Watts then put his left hand into Mr. Walker's neck in a choking move choking

Mr. Walker while Bliss stood motionless with her hands on her hips:



51. Mr. Walker was bound and defenseless. Defendant Watts continued to apply choking force to Mr. Walker's neck while Mr. Walker is seated, not resisting, and Bliss watches with her hands on her hips. Bliss does nothing to intervene:



52. Defendant Watts continues to exert choking force to Mr. Walker's neck pushing Mr. Walker while seated in his chair moving both back towards the wall:

53. Defendant Watts continues to apply such choking force to Mr. Walker's neck which now results in Mr. Walker being tipped back on the chair's two legs:



54. Mr. Walker's left leg extends out attempting to stop from being tipped over backwards while defendant Watts continues to apply choke force to Mr. Walker's neck all the while Bliss remains motionless watching:



55. For a moment defendant Watts appears to lessen his choke hold only to exert it again with greater force against Mr. Walker's neck crushing Mr. Walker's neck further back into the wall while choking Mr. Walker:



56. Defendant Watts continues to exert such chocking force that it causes Mr. Walker to be raised out of the chair having reached the wall:



57. Mr. Walker is being choked so hard that he is now being twisted to the side with the chair being tipped towards the wall while Bliss has not moved and calmly watches:



58. Defendant Watts continues to choke Mr. Walker forcing Mr. Walker to attempt to stand to breath:



59. Mr. Walker grimaces in pain:



60. During this time defendant Bliss comes over and moves a chair. Defendant Watts continues to apply choking force to Mr. Walker as he stands with his hands handcuffed behind his back:



61. Bliss walks over to Mr. Walker while Watts continues to choke Mr. Walker:





62. Watts and Bliss then deploy a Taser while Mr. Walker is compliant sitting down:



63. Watts continues to use force on Mr. Walker having used his left leg as pressure against

Mr. Walker's groin area while Bliss watches:



64. Mr. Walker told Watts that Bliss arrested him because she didn't like his tone of voice. Watts said "well, I'm going to back her up." The use of force stopped at approximately 12:43 having been of about a 10 minute duration.  Bliss took photos of Mr. Walker's injured neck and knee areas.

65. Mr. Walker did not say or do anything to any of those officers that was physically threatening to their safety.

66.  "The freedom of individuals verbally to oppose or challenge [official] action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Houston v. Hill*, 482 U.S. 451, 462–63, (1987). The First Amendment protects "the freedom to express disagreement with state action, without fear of reprisal based on the expression ...." *McCurdy v. Montgomery Cnty.,* 240 F.3d 512, 520 (6th Cir. 2001).

67. The defendant deputies used unnecessary pain actions in choking, pinching, and squeezing Mr. Walker in his neck and groin area.

68. The defendant Watts continued to inflict pain upon Mr. Walker forcing him into unnatural and unnecessary positions during the restraint in order to cause Mr. Walker further physical and psychological pain.

69. Even though Mr. Walker was defenseless and completely compliant, the defendant Watts continued to inflict pain using choking "pressure points" specifically designed to inflict pain while defendant Bliss watched, assisted, and participated in.

70. The defendant Watts' torture and torture tactics were directed upon Mr. Walker because he verbally insulted Watts and the defendant Bliss with protected speech.

71. And while the pressure pain points were being inflicted upon Mr. Walker, he was unable to comply with instructions to sit down because defendant Watts was not permitting Mr. Walker to sit and instead continued to exert choking force against Mr. Walker's neck. There was nothing Mr. Walker could do to alleviate the torture being inflicted upon him.

72. Defendant Watts and Bliss each maliciously and deliberately hurt Mr. Walker physically and psychologically without any legal reason to do so.

73. Defendant Bliss made false statements in her report. Bliss' description of the courthouse events are misleading and incomplete. Bliss also gave a false account claiming that Mr. Walker "pushed" Bliss and the events when Watts entered the room.  Bliss falsely claimed Watts only had his hands across Mr. Walker's chest rather than the truth which was Watts was choking Mr. Walker with both hands.

74. Bliss admits she used force on Mr. Walker which was unjustified.  Simply because Mr. Walker, being handcuffed, and in the booking room wants to stand up rather than uncomfortably sit with his hands behind his back is not a threat and does not pose a safety threat.  Bliss' written report was prepared immediately following the incident (June 28, 2023), it never indicated any threats made by Mr. Walker in the booking room. Rather, Bliss wrote she used force against Mr. Walker simply because he refused to sit in a chair. Bliss offered no other reason in her written incident report to explain the immediate need for use of physical force upon Mr. Walker.

75. The report submitted by defendant Watts contained false information. Watts admits his force was because of Mr. Walker saying "Fuck YOU" and then falsely claimed yelling "in an aggressive manner" constituted some kind of physical threat – particularly when Mr. Walker was seated with his hands handcuffed behind his back. Watts did admit it was because of what Mr. Walker said which was not fighting words but merely "verbal abuse." Watts falsely claimed that Mr. Walker stood up with his hands cuffed behind his back which "was very aggressive and appeared as if he was going to attack the deputies."

76. Watts falsely claimed that he feared for his safety and the safety of deputy Bliss – even though Bliss had been alone with Mr. Walker in the booking room while he was seated handcuffed. Watts falsely claimed that he used "reasonable force to stop his advancement" when Mr. Walker never moved towards defendant Watts at all as the video and snapshots of those videos reveal. Watts falsely claimed that Mr. Walker "continued to resist and aggressively push back against me." Watts falsely claimed he told Mr. Walker to "stop resisting." Watts falsely claimed that he only "placed my hand on the subject's shoulder while waiting" when in truth Watts used continuous choking to the neck of Mr. Walker. Watts claimed that he had only injured his hand and his arm which were self-inflicted and the result of Watts' excessive force.

77. At the preliminary hearing in Mr. Walker's criminal case, both Watts and Bliss gave false testimony under oath. Watts falsely testified that Mr. Walker "aggressively approached" Bliss, that he "stood up, and in an aggressive manner approaching me made a step towards Deputy Bliss and myself" and "when he stood up in his chair he made aggressive advancements towards me or towards myself and Deputy Bliss by taking an aggressive step towards us." The videos of the incident show that Mr. Walker never took a step at all. In describing "an aggressive step" Watts said Mr. Walker was "taunting" them, "cussing" "yelling at them" and "he stepped towards us taking a step" "he took a step towards us in a

close proximity of maybe four feet and that's when I approached him by grabbing his shirt and his body trying to get him into a chair." "He was resisting by tensing up his body, tensing up his frame pushing back towards me."  He stated that "dispatch" had told him that Mr. Walker had been "aggressive." When asked when he made physical contact – "did that amount to a choke hold" Watts falsely testified "absolutely not." Watts falsely testified that his hands only went into Mr. Walker's shoulder area.

78. Defendant Bliss falsely testified under oath that when she encountered Mr. Walker at the courthouse, he engaged in the same yelling behavior as she said occurred at the sheriff's department which was false.  She falsely claimed that Mr. Walker was "non-compliant" (meaning that he was disobeying lawful commands – which he was not) that he was loud – when he was not.  She falsely claimed he called her a "fat cow" in front of the courthouse. She was asked whether she asked for backup because Mr. Walker was "out of control" to which Bliss said yes.  Another false statement.  Bliss falsely testified that she could not see where Watts' hands were placed on Mr. Walker as Bliss had a clear view of defendant Watts' hands. Bliss falsely testified that she could not view whether Watts gripped Mr. Walker's neck area.

79. Elk County Deputies Bliss and Watts conspired to conceal, justify, or otherwise provide misleading false facts aimed at providing a false narrative justifying each defendant's actions as they described in their incident reports.

80. John Walker did not discipline or admonish any of the defendants for their actions as Elk County Deputies for the actions described in this Complaint.

81. Defendants reports omitted critical facts demonstrating that their claims that Mr. Walker was arrested for committing "disorderly conduct" was false.

82. Both Watts and Bliss admit why they did what they did – because Mr. Walker called them names – "bitch" and "fuck you."  Speech characterized as profane as used by Mr. Walker did not constitute fighting words. *See Wood v. Eubanks*, 25 F. 4th 414, 423-25 (6th Cir. 2022)

(defendant calling police "fucking thugs," "motherfuckers," "bitch ass fucking pigs," "dirty rat bastards," and "pussies with badges" were not fighting words).

83. Defendant Bliss does admit why she arrested Mr. Walker – because Mr. Walker called her names which were not fighting words – as defendant Bliss falsely claimed.  Defendant Bliss admits she arrested Mr. Walker for name calling. Mr. Walker's statements made to the officers were not "fighting words" within the legal meaning of K.S.A. 21-6203(a)(3).  *See State v. Dotson*, 133 Ohio App.3d 299, 301, 303 (7th Dist.1999) (not "fighting words" to call various Deputies "motherfuckers"); *Chillicothe v. Lowery*, 4th Dist. Ross No. 97 CA 2331, 1998 WL 396316, *1,8 (July 13, 1998) (saying "fuck you" to Deputies and repeatedly calling them "motherfuckers" did not constitute "fighting words"); *see also State v. Baccala,* 326 Conn. 232, 251-256 (Conn. 2017) (calling a store manager a "fat ugly bitch," and worse, and saying, "fuck you, you're not a manager," were not "fighting words"; *People in the Interest of R.C.,* 411 P.3d 1105, 2016 COA 166, ¶ 26-34 (Colo.App.2016) (rejecting an argument that the term "cocksucker," "by its mere utterance qualifies as fighting words").

84. The reports were falsified to cause and support Mr. Walker's arrest and prosecution.

85. Bliss further retaliated against Mr. Walker by pushing Mr. Walker demanding that he sit and then calling Watts to do her dirty work – choking and putting Mr. Walker into a choking restraint where he could inflict further pain and torment upon Mr. Walker.  They justified this as purportedly keeping each other safe which was false and a pretextual community-caretaking rationale. *Cady v. Dombrowski,* 413 U.S. 433, 441 (1973);  *United States v. Ibarra*, 955 F.2d 1405, 1409 (10th Cir.1992).

86. The facts do not demonstrate any reasonable suspicion of criminal activity on the part of Mr. Walker yet the defendants each engaged in an unnecessary rapid escalation of force against him.  Merely because Mr. Walker held out his hands and communicated to defendant Bliss to arrest him is not any probable cause for arrest.  "A person approached by law

enforcement is entitled to ignore his interrogator and walk away." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980).

87. Defendant Bliss and Watts ignored Mr. Walker's calm demeanors and conversations. These facts will show that the actions taken by these defendants were intentional and retaliatory.

88. Because of an absence of probable cause, any use of force was unreasonable.

89. Mr. Walker plausibly alleges violations of clearly established Constitutional rights to be free from false arrest, malicious prosecution, and excessive use of force.

90. Plaintiff seeks compensation for the dignitary, economic, and emotional injuries he suffered as a result of the unlawful seizure and meritless charges brought against him. Plaintiff seeks punitive sanctions against the individual officers to punish them for their callous disregard of his Constitutional rights and to deter them from this type of misconduct in the future.

91. Bliss witnessed defendant Watts' use of force and failed to report defendant Watts' unreasonable use of force.

92. Each defendant understood that pain compliance techniques are not to be used at all upon a citizen when no probable cause exists to arrest or upon an arrested person unless there is an objective to be achieved by the officers, a command is given by the officers, and the detainee can comply with the command. The use of choking and other pain compliance techniques were only utilized to retaliate and inflict pain upon Mr. Walker.

93. In this case, the use of the choking, as well as Bliss' aiding and abetting that use, was done with malice and the only purpose for such use of force was to inflict pain upon Mr. Walker.

94. The defendants fabricated charges as a means to justify their unlawful arrest and excessive force. Mr. Walker's actions did not meet the mens rea or actus reus elements of the charges against him.

### FIRST CAUSE OF ACTION
**WRONGFUL DETENTION**
**(42 U.S.C. § 1983)**
**(AGAINST ALL DEFENDANTS)**

95. Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

96. Mr. Walker was arrested on Tuesday, June 27, 2023, outside the Elk County Courthouse (a public forum) because Mr. Walker looked at defendant Bliss, wanted to be left alone, and called her a "moron" and a "fucking moron" which offended her.  Mr. Walker was known to Bliss.  They had prior encounters.  Bliss said she asked for backup before the encounter with Mr. Walker.  Bliss said Mr. Walker was engaged in disorderly conduct because he was looking at her and "cussing."  Even if looking at an Elk County Deputy and cussing could possibly be a crime of misdemeanor disorderly conduct (which it isn't) Bliss' purported idea of it being a crime by looking at her and having vulgar words directed at her is traditionally unenforced. The Elk County Sheriff's Department does not typically arrest individuals for ignoring a Deputy who is witnessing no crime or when individuals use vulgarities or call the officer derogatory names out in the public.

97. And certainly there were less-intrusive means of addressing Mr. Walker's statements to Bliss that did not require an arrest or booking.

98. Mr. Walker's words to Bliss were protected speech under the U.S. Constitution.  The arrest of Mr. Walker by Bliss was motivated, altogether or in part, by Mr. Walker's exercise of his First Amendment rights. The arrest was retaliatory.  Bliss had no probable cause to arrest Mr. Walker and then detain him. This violates the Fourth Amendment of the U.S.

Constitution. "The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause." *Manuel v. City of Joliet,* 580 U.S. 357, 367 (2017). The Elk County prosecutor would know that there was no probable cause to arrest Mr. Walker for calling Bliss names or even using vulgar words in her presence.  None of that constitutes the crime of Disorderly Conduct in Kansas.

99. The magistrate in Mr. Walker's criminal case was given information about that arrest was so lacking in indicia of probable cause as to render official belief in its existence unreasonable. The magistrate was provided material facts by Bliss that was intentionally withheld from that magistrate.  Bliss did not provide the magistrate an accurate recitation of the actual conversation which its inclusion would have negated the existence of probable cause. Bliss did not provide the magistrate with the AXON video of her decision to arrest Mr. Walker which its inclusion would have negated the existence of probable cause to arrest Mr. Walker.

100. The Elk County Sheriff's Department then booked Mr. Walker and detained him The Sheriff later transferred him to a Chautauqua County jail in Sedan, Kansas where Mr. Walker was detained even though Elk County had sufficient room. The Sheriff told Mr. Walker's wife that he has a policy that individuals are not jailed in Elk County if the individual is related to a Sheriff's employee.

101. Booking into the Elk County jail, then the transfer to the Chautauqua County jail, extended the duration, and enhanced the severity, of Mr. Walker's  seizure: he was involuntarily moved where he was searched, stripped of civilian clothing, dressed in jail garb, photographed, fingerprinted, left in his cell. While detained, Mr. Walker was unable to eat because of his swollen and damaged throat due to the choking inflicted by defendant Watts.

29

102. Defendant Prosecutor Gillet then further retaliated and punished Mr. Walker by keeping him in jail six days by not bringing Mr. Walker before a Magistrate Judge until Monday, July 3, 2023, when his bond was set, and he bonded out.

103. Plaintiff suffered damages as a result of the above actions.

## SECOND CAUSE OF ACTION
### RETALIATION,  RETALIATORY ARREST, AND RETALIATORY BOOKING FOR EXERCISE OF PROTECTED SPEECH
### (42 U.S.C. § 1983)
### (AGAINST DEFENDANT BLISS)

104. Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

105. Plaintiff Walker was  engaged in a constitutionally protected activity at the time of the arrest. Defendant Bliss' actions against the plaintiff would chill a person of ordinary firmness from continuing to engage in the protected activity; and his protected activity was a substantial or motivating factor in Bliss' decision to arrest and book him.

106. Mr. Walker was arrested without warrant on Tuesday, June 27, 2023.   He was booked that same day. In Elk County, a defendant is brought before a Magistrate within 48 hours of the arrest and a Magistrate judge was available in Elk County on Wednesday and Friday.

107. The Elk County Sheriff's Department and Prosecutor Gillet then further retaliated and punished Mr. Walker by keeping him in jail six days by not bringing Mr. Walker before a Magistrate Judge until Monday, July 3, 2023, when his bond was set, and he bonded out.

108. Defendant Bliss repeatedly retaliated against Mr. Walker for his speech directed to her. Mr. Walker wasn't breaching the peace or doing anything constituting disorderly conduct when Bliss arrived. But when he repeatedly called her a "moron" and "fucking moron" Bliss retaliated trumping up charges based upon protected speech ("You're looking at me and cussing at me"). When Mr. Walker offended her again ("I said it again") Bliss said "You know what? I will arrest you. You know what?  You are under arrest."  But that was not the end of

the retaliation.  Arriving at the booking room, Mr. Walker offended Bliss again calling her names.  Rather than process the booking, Bliss called for a stronger male deputy – Watts – with his police dog.  Bliss used Watts as her police dog smugly saying to Mr. Walker – "I want to introduce you to Deputy Watts."  And while Watts choked Mr. Walker Bliss merely watched – her passivity a sign that she didn't feel threatened and that Mr. Walker was not doing anything to merit a use of force.

109. Each defendant was "motivated by improper considerations" such as "the desire to prevent the exercise of a constitutional right." *Bryan v. City of Madison*, 213 F.3d 267, 277 (5th Cir. 2000).

110. Defendant Watts and Bliss singled out Mr. Walker because he called them names in their presence. "Singling out one individual, banning his (perhaps disfavored) speech, and essentially preventing him from engaging in a form of civil discourse that is available to everyone else ... is unreasonable." *McBreairty v. Sch. Bd. of RSU 22*, 616 F.Supp.3d 79, 96 (D. Me. July 20, 2022).

111. Each defendant further ratified those decisions by failing to meaningfully investigate and punish the unconstitutional conduct.

112. An inference of policy or custom may be drawn from a failure to take remedial action after a constitutional violation. *See Larez v. City of Los Angeles*, 946 F.2d 630 (9th Cir.1991).

113. Defendants had a policy or custom of viewpoint discrimination from the failure of the Sheriff's Department or the defendant supervisors to take any remedial steps after the violation. *See Larez; Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985).

114. At the time of the arrest, Plaintiff Walker was engaged in constitutionally protected activity.

115.  Defendant Officers knew that Plaintiff's conduct did not violate Kansas state law.

116. Defendant Officers knew that Plaintiff's conduct was affirmatively protected by federal law.

117. The defendant Deputies decision(s) to arrest, book, and initiate prosecution against the plaintiff came directly in response to and because of Plaintiff's reasonable exercise of his constitutionally protected rights under the First Amendment.

118. Defendant Officers sought to punish Plaintiff for his speech. As a result, the plaintiff suffered monetary damages in defending against the prosecution, emotional, other economic, and dignitary injuries.

119. Plaintiff has lost confidence in his ability to assert the rights guaranteed to him the Constitution of the United States of America. Plaintiff fears that officers will continue to retaliate/punish him for asserting his rights in the future.

120. Such actions by Defendant Deputies, while acting under color of state law, deprived Plaintiff of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America. These deprivations proximately caused Plaintiff's loss of liberty, emotional distress, and other harms associated with retaliatory arrest.

### THIRD CAUSE OF ACTION
**42 U.S.C. §1983 FOURTH AMENDMENT VIOLATION – UNLAWFUL ARREST/FAILURE-TO-INTERVENE**
**(AGAINST ALL DEFENDANT DEPUTIES)**

121. Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

122. It is not necessary that a Deputy actually participate in the use of excessive force in order to be held liable under section 1983. Rather, an officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force, can be held liable for his nonfeasance.

123. Bliss claimed Mr. Walker's conduct in front of the courthouse justified the arrest.  But that conduct cannot supply the probable cause necessary to initiate the arrest. *See Davis v. City of Apopka*, 78 F.4th 1326, 1333 n.3 (11th Cir. 2023) ("Probable cause is measured at the time of the arrest, not at some time before or after").

124. The cited deputies post-arrest statements are *post hoc* decision-making which together indicate pretext.

125. Mr. Walker was present on a public area being outside the courthouse.

126. Defendants knew that the plaintiff's specific conduct did not violate any Kansas or Federal law in lawfully observing or recording their activities.

127. Prior to the arrest, there was no crime committed by Mr. Walker, no emergency, nor did Mr. Walker threaten, or pose a threat, to any officer.

128. Defendants Watts and Bliss failed to take reasonable steps to protect Mr. Walker from defendant Bliss's unlawful arrest and Watts' unlawful use of excessive force.

129. The Chief of Police John Walker has further justified these actions by not disciplining any of the defendants or in admitting fault.

130. Based on their training regarding First Amendment protections, the defendants each knew that simply because Mr. Walker holding out his arms to be cuffed as saying arrest me did not constitute any probable cause to arrest Mr. Walker and that saying arrest me or holding out his arms was Constitutionally protected activity.

131. Despite knowing this, the defendant Bliss arrested Mr. Walker in retaliation, claiming pretextually that Mr. Walker did other things that justified her unlawful arrest.

132.  At any time during the interaction with Plaintiff or the subsequent booking process, Defendants Watts, Bliss, and Sheriff Walker had the opportunity to intervene but failed to do so.

133. Instead of intervening to prevent the unlawful arrest of the plaintiff, all the defendant deputies either chose to participate in the arrest the plaintiff or participate in that arrest without possessing any information that Mr. Walker had committed any crime.

134. The actions as described herein of Defendant Deputies, while acting under color of state law, deprived Plaintiff of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including the right to freedom from unreasonable search and seizure.

**FOURTH CAUSE OF ACTION**
**EXCESSIVE FORCE**
**(42 U.S.C. § 1983)**
**(AGAINST BLISS AND WATTS)**

135. Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

136. Plaintiff makes alternative excessive force claims. Plaintiff posed no risk of harm to the defendant Officers.

137. Defendant Bliss lacked probable cause to approach, stop, or to arrest Mr. Walker.  Any force used by defendants was excessive because the stop and arrest were unlawful and there was no basis for any threat or any use of force. *Richmond v. Badia*, 47 F.4th 1172, 1180 (11th Cir. 2022).

138. If a jury finds the arrest unconstitutional, the use of force and the search were unconstitutional. This becomes elements of damages for the § 1983 violation.

139. Alternatively, even if the arrest of Mr. Walker was supported by probable cause, the force used in effectuating the arrest remains excessive.

140. The force was not reasonably proportionate to the need for that force given the totality of the circumstances facing the defendant Deputies prior to that force. There was no physical aggression or resistance shown by Mr. Walker prior to the use of force.

141. Defendants placing Mr. Walker in unnatural positions without verbal commands itself caused Mr. Walker pain in which he was unsure and unable to accomplish those physical feats.

142. Because Mr. Walker had not been instructed or knew what was expected, he was punished by defendant Watts repeatedly using his cruel and malicious gripping, choking, and poking similar to electrified cattle prods.

143. As such, the use of force by the defendant Watts and Bliss was unjustified, and demonstrated deliberate indifference to his constitutional civil rights.

144. Further, after the unwarranted aggressive grabbing of Mr. Walker's neck, chest, arms, pain pressure maneuvers, Watts restrained Mr. Walker choking him against the wall and restricted his movement.

145. Prior to the excessive use of force, the plaintiff Walker posed no risk of harm to Defendants Watts or Bliss.

146. The use of force upon the plaintiff Walker was unjustified, constituted an unreasonable and excessive use of force, and demonstrated deliberate indifference to his constitutional civil rights.

147. There was gratuitous use of force by defendants Watts and Bliss because Mr. Walker was compliant when he was told he was under arrest and did not resist the arrest, was compliant coming out of the vehicle and during the booking.

148. When Mr. Walker was booked into jail, he remained there six days.

149. In addition, without cause or justification Sheriff John Walker, contributed to, coordinated with, or otherwise supported the defendants Bliss and Watts using excessive force upon the plaintiff Robert Walker Jr.

150. By supporting, contributing, or otherwise enabling defendant Bliss and Watts actions, the defendant Sheriff Walker allowed an excessive, unnecessary, and disproportionate use of force to be inflicted upon Plaintiff Walker.

151. Defendant Bliss was therefore malicious, reckless, callous and acted with deliberate indifference to Plaintiff Walker's rights.

152. Defendant Gillett was therefore malicious, reckless, callous and acted with deliberate indifference to Plaintiff Walker's rights.

153. Defendant Watts was therefore malicious, reckless, callous and acted with deliberate indifference to Plaintiff Walker's rights.

154. The battery, detention, and arrest of this plaintiff was the result of conduct that was reckless, malicious, and deliberately indifferent to Mr. Walker, and in depriving him of his constitutional rights.

155. All of the named Deputies in this Complaint, while acting under color of law as authorized officers and agents of the Sheriff's Department of Elk County, Kansas, caused a constitutional deprivation of the rights of this plaintiff under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

156. The actions alleged in this Complaint directly and proximately resulted in injury to the plaintiff.

157. As a direct result of the grossly negligent misconduct of each defendant as set out in this Complaint and associated deliberate indifference, this plaintiff was injured and is entitled to recover damages flowing from the deprivations of the plaintiff's constitutional rights under the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

158. Plaintiff is entitled to attorney's fees expended in this litigation pursuant to 42 U.S.C. Section 1988.

WHEREFORE, Plaintiff demands judgment and compensatory and punitive damages against each Defendant, and in addition demands attorney's fees and costs pursuant to 42 U.S.C. Sections 1983 and 1988 and demands trial by jury on all issues so triable.

## FOURTH CAUSE OF ACTION
### MALICIOUS PROSECUTION AND ABUSE OF PROCESS UNDER 42 U.S.C. SECTION 1983
### (AGAINST DEFENDANT DEPUTIES AND PROSECUTOR)

159. Plaintiff repeats and realleges each of the allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

160. Plaintiff was charged with disorderly conduct, interference with law enforcement, battery on law enforcement officer, in Elk County District Court Case Number EK-2023-CR-000029.

161. After arresting the plaintiff Walker, each of the defendant Deputies caused a judicial proceeding to be commenced against Mr. Walker by the filing of reports and information in Elk County Kansas.

162. No reasonably cautious Deputy in the position of the Defendant Officers would have believed that Mr. Walker could be arrested for cussing at Bliss, or calling her a moron, or saying "arrest me" or in holding out his arms to be cuffed.

163. Said judicial proceeding was instituted by Defendants without probable cause as Mr. Walker did not commit a crime in the officers' presence or otherwise.

164. A reasonable inference from the lack of probable cause, combined with the AXON videos, photographic snapshots taken from those videos, the reports made by these defendants, and the statements made by these defendants preceding the arrest, during the arrest, and after the arrest, that each of the Officer defendants acted with malice when Mr. Walker was unlawfully arrested, and initiated the criminal prosecution by booking Mr. Walker.

165. Any Kansas county prosecutor knows or should know that Mr. Walker cannot be arrested for merely yelling or "making a scene" (whatever that means) or for "noisy conduct" or words that do not constitute "fighting words" under K.S.A. 21-6203.

166. In *State v. Huffman,* 228 Kan. 186 (1980), the Kansas Supreme Court reviewed a challenge to identical language in an older statute and held that application was limited to fighting words. S*ee also United States v. McKinney,* 9 Fed. App'x. 887 (10th Cir. 2001)(stating that K.S.A. 21-4101(c) applies only to fighting words).

167. As a result of each of the defendant's respective conduct described in this Complaint, the plaintiff had to endure jail, along with the stress and humiliation of dealing with an unfounded criminal prosecution, and the psychological and physical trauma.

168. The actions as described herein of these defendant officers, while acting under color of state law, deprived Plaintiff of the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, including the right to freedom from wrongful prosecution as guaranteed by the Fourth Amendment to the Constitution of the United States of America, made actionable pursuant to 42 U.S.C. § 1983. These deprivations proximately caused Plaintiff's loss of liberty, emotional distress, and other injuries associated with malicious prosecution.

### SIXTH CAUSE OF ACTION
#### WRONGFUL DETENTION AND NEGLIGENT FAILURE TO TRAIN AND SUPERVISE UNDER 42 U.S.C. SECTION 1983 AGAINST DEFENDANT ELK COUNTY SHERIFF

169. The plaintiff hereby realleges and incorporates by reference the allegations contained above.

170. All conditions precedent to filing this action have been met by the plaintiff or have been waived by the Sheriff's Department Elk County.

171. On June 27, 2023, the defendant County Prosecutor, Deputies, and Sheriff were acting within the course and scope of their employment.

172. The responsibilities related to De-Escalation with respect to Elk County Sheriff Department are clearly written and effectively defined in the Manuals utilized by the Sheriff.

173. This incident involved the defendants escalating to the third level of force (Empty-Hand Control/ Pain Compliance /Detention and Arrest) without issuing clear verbal commands to Mr. Walker. There were no attempts to "safely engage in active communication and listening techniques" in order to de-escalate this contact were made.

174. No defendant explained to Mr. Walker exactly what he expected prior to the use of Watts' choking and restraining – there was no warning to Mr. Walker as to the continuation of any behavior would warrant an escalation to Watts' choking and restraining.

175. Rather, defendant Watts, without any attempt to communicate clear lawful orders or information to this plaintiff, angrily lunged at Mr. Walker. This was all done in the context of "officer rage."

176. The hyper-escalation of use of force in this case occurred without clear communication between Bliss and Mr. Walker; or between Watts and Mr. Walker and without clear and consistent communication or messaging within the command structure at the scene. It also occurred without consideration of de-escalation.

177. The hyper-escalation of force was a result of the personal animosity towards Robert Walker Jr.

178. Mr. Walker was wrongfully detained by the Sheriff and Elk County Prosecutor.. Mr. Walker was arrested without warrant on Tuesday, June 27, 2023. In Elk County, a defendant is brought before a Magistrate within 48 hours of the arrest and a Magistrate judge was available in Elk County on Wednesday and Friday.

179. The Elk County Sheriff's Department and Prosecutor Gillet then further retaliated and punished Mr. Walker by keeping him in jail six days by not bringing Mr. Walker before a Magistrate Judge until Monday, July 3, 2023, when his bond was set, and he bonded out.

180. If the delay in getting Mr. Walker before a Magistrate was not intentional, the Sheriff's Department failed to properly train and supervise these Deputies as to steps to get an arrested detainee before a magistrate so that he can be released from jail.

181. The Sheriff's Department also failed to properly train and supervise these Deputies in how to handle Mr. Walker's presence or how to, if at all, respond to his statements "fuck you," "fucking moron" or arrest me to only name a few of the phrases used by Mr. Walker.

182. The named deputies in this Complaint breached the duties owed to this plaintiff when they each failed to adhere to accepted law enforcement standards and practices for detaining and arresting subjects.

183. The Sheriff's Department failed to properly train and supervise its officers as to its Policy on probable cause for arrest, protected speech, and name calling directed towards police.

184. The Sheriff's Department failed to properly train and supervise its officers as to its Policy on alternative non-violent tactics to decrease the intensity of a situation, improve decision-making, improve communication, reduce the need for force, and increase voluntary compliance.

185. The Sheriff's Department has ratified and approved the actions of each of the defendants as the Sheriff's Department Police Department and these defendants continue defending and justifying all of that conduct in Mr. Walker's criminal proceedings.

186. Defendant Elk County Sheriff owed Plaintiff, as well as all citizenry, a duty of care to hire and retain and supervise competent, law-abiding officers, as well as to enact policies that

ensure that officers do not arrest citizens because of bias or without probable cause or use excessive force against civilians.

187. Defendant Elk County Sheriff breached his official duty of care to Plaintiff by hiring and retaining, and improperly supervising each of the named Deputies in this Complaint.

WHEREFORE as a proximate and direct result of the negligence of the Sheriff's Department, Plaintiff suffered severe mental and emotional distress arising from fear of incarceration and the humiliation, shame, embarrassment, and disgrace from detention, interrogation, arrest, booking, fingerprinting, and search of his body, bodily injury resulting in physical pain and suffering and diminished health, anxiety, mental pain and suffering, loss of the capacity for the enjoyment of life, loss of earnings, and diminution and loss of the ability to earn money which are either permanent or continuing to this day and are likely to continue into the future.

## PRAYERS FOR RELIEF

188. As to all counts, Defendants, under color of law, have deprived and continue to deprive the plaintiff of the right to associate, and free speech in violation of the First, Fourth, and Fourteenth Amendments to the United States Constitution.  Accordingly, this plaintiff is damaged in violation of 42 U.S.C. § 1983, and, therefore, is entitled to damages; declaratory and preliminary and permanent injunctive relief against continued enforcement and maintenance of the defendants' unconstitutional customs, policies, and practices; and attorney fees and expenses pursuant to 42 U.S.C. § 1988.

189. That as a direct and proximate result of the aforementioned unlawful conduct and omissions of each of the defendants, Plaintiff suffered fear, pain, anguish, and the following damages: a. shock, fright, anxiety, mental distress, annoyance, vexation, and humiliation suffered by plaintiff; b. loss of freedom; c. pain and suffering during the arrest and confinement; d. isolation from friends and family; e. loss of dignity; f. loss of reputation; g.

Loss of enjoyment of life; h. Compensatory and punitive damages; and any and all other damages otherwise recoverable under USC Section 1983 and Section 1988; and punitive damages in the individual capacity of each Defendant.

190. Mr. Walker's First and Fourth Amendment rights were callously violated by each defendant sued in their individual capacity.

191. Mr. Walker's First and Fourth Amendment rights were maliciously violated by each defendant sued in their individual capacity.

192. Mr. Walker's First and Fourth Amendment rights were wantonly violated by each defendant sued in their individual capacity.

193. Mr. Walker's First and Fourth Amendment rights were oppressively violated by each defendant sued in their individual capacity.

194. The acts by the defendants in this Complaint were prompted or accompanied by ill will, or spite, or grudge, either toward Mr. Walker individually, or toward persons in one of more groups or categories of which Mr. Walker is a member.

195. The acts by the defendants in this Complaint were done in reckless or callous disregard, or indifference to, the rights of one of more persons, including Mr. Walker.

196. The acts by the defendants in this Complaint were done in a way or manner which injures, or damages, or otherwise violates the rights of Mr. Walker with unnecessary harshness or severity, as by misuse or abuse of authority or power, or by taking advantage of some weakness, or disability, or misfortune of Mr. Walker.

WHEREFORE, the plaintiff Robert Walker Jr respectfully requests that this Court enter judgment in his favor and against all Defendants for compensatory damages, as referenced above, punitive damages against the individual Defendants, for interest as allowed by law, for costs, expert witness fees, and reasonable attorney fees, as allowed by

statute or as otherwise allowed by law, and for any other and further relief that this Court

shall deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by Jury on all causes of action.

<u>/s/Linus L. Baker</u>
Linus L. Baker, KS 18197
6732 West 185th Terrace
Stilwell, KS  66085-8922
Telephone:  913.486.3913
Fax:          913.232.8734
E-Mail: linusbaker@prodigy.net
Attorney for the plaintiff

Verification of Complaint

I, Robert Walker Jr., am the plaintiff in the above-captioned matter. I have reviewed the foregoing allegations in this Verified Complaint, and I hereby declare under penalty of perjury that the foregoing allegations are true and correct to the best of my knowledge and understanding.

Date: September 9, 2024                    By: _____
                                               Robert Walker Jr