IN THE UNITED STATES DISTRICT COURT
FOR DISTRICT OF KANSAS

Robert Walker Jr

                Plaintiff

v.                                    Case No. 6:24-cv-01155-TC-ADM

Jill R. Gillett *et al*

                Defendants

**OPPOSITION TO MOTION TO DISMISS**

As a preliminary matter, the defendants' request to isolate the use of the videos to Counts III and IV. But defendants cite no authority for this proposition. The videos and the snapshots should be considered as to all counts and viewed with favorability to the plaintiff unless the snapshots or video "blatantly contradicts" the plaintiff's recitation of facts. *Blake v. Wallace,* No. 22-3163, 2024 WL 5087805, at *2 (10th Cir. Dec. 12, 2024) ("blatantly contradicts a material factual allegation, we may disregard that allegation in favor of what is actually depicted on the video"). Defendants do not contest the accuracy of the snapshots. The below videos contain information on the arrest and custody of Mr. Walker which the plaintiff is not sure the entirety of the 14 videos were provided to the Court for review:



1

The blatant-contradiction standard is "a very difficult one to satisfy." *Vette v. K-9 Unit Deputy Sanders,* 989 F.3d 1154, 1167 (10th Cir. 2021).¹

### STEP ONE    WALKER ARRESTED AND DETAINED WITHOUT PROBABLE CAUSE

Defendant Bliss does not challenge Counts I or Count II which contain Unlawful Detention and False Arrest Counts.  The Court is presented with an individual falsely arrested, handcuffed, and taken to the Sheriff's Office for booking. Thus, there was lack of probable cause for the arrest which occurs when the government applies physical force to seize a person or asserts lawful authority to which the subject accedes. *California v. Hodari D.,* 499 U.S. 621, 624, 626-27 (1991).

### COUNT IV  FORCE OR EXCESSIVE FORCE AS TO BLISS

With that default premise being unchallenged, the defendant Bliss had no right to arrest Mr. Walker or to exert *any* force upon Mr. Walker.  *Any force* exerted by Bliss against Mr. Walker caused damages to Mr. Walker including handcuffing. *Cortez v. McCauley*, 478 F.3d 1108, 1127 (10th Cir. 2007) (*en banc*).²

---

¹ The photographic evidence incorporated into the Amended Complaint is proper. *See Nkemakolam v. St. John's Military Sch.*, 876 F. Supp. 2d 1240, 1245-47 (D. Kan. 2012) (photographs proper); *Rowan v. Sunflower Elec. Power Corp.,* Case No. 15-cv-9227-JWL-TJJ, 2015 WL 8024320, at *2 (D. Kan. Dec. 4, 2015) (32 photographs of electrical burns to plaintiffs proper). The explanations themselves of the photos are proper. *See Brizuela v. City of Sparks*, No. 3:19- CV- 00692, 2021 WL 4150936 at *12 (D. Nev. Sept. 13, 2021) (written explanations of photos proper).

² "If the plaintiff can prove that the officers lacked probable cause, he is entitled to damages for the unlawful arrest, which includes damages resulting from any force reasonably employed in effecting the arrest." *Id.* at 1127.  Thus, "even *de minimis* force will violate the Fourth Amendment if the officer is not entitled to arrest or detain the suspect." *Reese v. Herbert*, 527 F.3d 1253, 1272 (11th Cir. 2008).

**STEP TWO    WATTS IS CALLED AFTER WALKER SITS HANDCUFFED IN THE STATION**
**COUNT IV  FORCE OR EXCESSIVE FORCE AS TO WATTS**

Mr. Walker is brought to the station under an unconstitutional false arrest. When the defendant Watts entered the room all was calm. There was no "split second" decision for Watts to make. In fact, defendant Bliss is not at all worried about Mr. Walker and calmly makes introductions: "I want to introduce you to Deputy Watts." So Watts does not need to rely – could not rely – on something not observed by Watts when he entered the room. All was calm when Watts entered the room: Amended Complaint paragraphs:

> 43. Mr. Walker was completely compliant sitting in the chair. Mr. Walker sat in the chair while Bliss had something else on her mind other than booking Mr. Walker. She called for Deputy Watts and continued to stand with her hands on her hips talking to Mr. Walker.
> 44. While Mr. Walker was seated with his hands handcuffed behind his back, the defendant Watts then entered with a police dog.
> 45. Bliss told Mr. Walker: "I want to introduce you to Deputy Watts." Bliss told Watts "he is being arrested for disorderly conduct.[3]

**STEP THREE    WATTS' USE OF FORCE AND BLISS' PARTICIPATION IN IT**

Mr. Walker was not a pretrial detainee. A "pretrial detainee" is one who has had a "judicial determination of probable cause as a prerequisite to the extended restraint of [his] liberty following arrest." *Est. of Booker v. Gomez,* 745 F.3d 405, 418-19 (10th Cir. 2014). The Fourth Amendment governs excessive force claims arising

---

[3] Is Bliss telling Watts that Walker is now being arrested after he was handcuffed or saying that Mr. Walker had been arrested for disorderly conduct prior to the handcuffing? Or being arrested for purported disorderly conduct that did not happen in her presence at all? It is unclear which Bliss meant. Mr. Walker asked Bliss: ¶43 "What law was broken?" Bliss said "disorderly conduct" which was a misdemeanor offense. Mr. Walker said "I would like to see the recording of my disorderly conduct." Bliss said "at this point I don't know." Bliss would know she had an AXON recording if the disorderly conduct happened in her presence.

from "treatment of an arrestee detained without a warrant" and "prior to any probable cause hearing." *Id.* As pled, and as demonstrated in the snapshots, any force was unjustified and was also excessive.

When Watts used force he was not doing an investigative stop or arresting Mr. Walker for a crime. Walker is under arrest and Watts' only justification for his use of force is safety. This Court considers "officer safety concerns and whether the suspect cooperates or resists." *Cortez* at 1128. Thus the only relevant factor was safety – whether Mr. Walker "poses an immediate threat to the safety of officers." This factor "is undoubtedly the most important factor in determining the objective reasonableness of an officer's use of force." *Est. of Valverde ex rel. Padilla v. Dodge,* 967 F.3d 1049, 1060-61 (10th Cir. 2021). And to that factor a jury could readily find Mr. Walker posed no such safety threat at all. When a "suspect is unarmed we should consider (although not exclusively) the evidence indicating whether or not the suspect (1) was exhibiting compliance or hostility toward the authority of the officers, (2) was exhibiting a willingness to use violence against the officers or others, and (3) was capable of causing and in a position to cause imminent severe bodily harm." *Waterhouse v. Direzza,* 129 F.4th 1212, 1223 (2025).[4]

Mr. Walker was sitting with is hands handcuffed behind his back when Watts walked into the room. There was no existing use of force happening and in fact Bliss

---

[4] In assessing any threat Mr. Walker posed the Court considers: "(1) whether the officers ordered the suspect to drop his weapon, and the suspect's compliance with police commands; (2) whether any hostile motions were made with the weapon towards the officers; (3) the distance separating the officers and the suspect; and (4) the manifest intentions of the suspect." *Cortez* at 1260.

is calmly standing, with hands on her hips, doing nothing. Watts enters with his dog and Bliss made her "introduction" rather than any help-me-control-this-person request. The encounter then devolved into language. While Mr. Walker displayed verbal crudeness, he was nevertheless handcuffed and was not "capable of causing and in a position to cause imminent severe bodily harm" simply by standing with his hands cuffed behind his back. *Waterhouse* at 1223. Mr. Walker was not spitting, kicking, or doing anything to cause property damage when Watts lunged at him. And notice that at the "precise moment" Watts lunges at Mr. Walker (as *Vette* refers to) deputy Bliss remains blasé – a statute – and does not react at all in the same way deputy Watts does. Deputy Bliss' contemporaneous non-reaction to Mr. Walker's behavior is evidence there was no safety concern justifying Watts' use of force. If Mr. Walker was truly this safety risk when he stood, why didn't deputy Bliss immediately react the same way as defendant Watts? A jury could find that the deputy Bliss' initial non-force reaction to Mr. Walker's standing was the correct one while deputy Watt's use of force was improper. Mr. Walker was not "fleeing or actively resisting at the precise moment the officer employed the challenged use of force." *Vette at* 1169. All that Mr. Walker could do was back up while Watts choked him. This is nothing remotely similar to the split second trapped-in-a-burning-basement scenario of *Waterhouse*.[5] Mr. Walker could not even display resistance or compliance as Watts

---

[5] "Mr. Waterhouse was unarmed, he was not unthreatening. He was running toward Sergeant Direzza from less than ten feet away in a fiery basement… Sergeant Direzza was in an extremely vulnerable position in the smoke-filled, fiery basement. [ ] A reasonable officer would have feared Mr. Waterhouse's attacking him or other officers, thereby trapping the officers in the burning basement and presenting a grave

persistent choking pushed Mr. Walker backwards into the wall. See *McCoy v. Meyers*, 887 F.3d 1034, 1051 (10th Cir. 2018) ("initial resistance does not justify the continuation of force once the resistance ceases"). Utilizing all of those factors demonstrate no force was justified. Mr. Walker did not deserve the physical onslaught from Watts: "a simple physical struggle in that environment [was not] a matter of life or death." *Waterhouse* at 1223.

### BLISS' PARTICIPATION IN WATTS' USE OF FORCE

Bliss participated in Watts' improper use of force. ¶64 "Mr. Walker told Watts that Bliss arrested him because she didn't like his tone of voice. Watts said "well, I'm going to back her up." The use of force stopped at approximately 12:43 having been of about a 10 minute duration.[6] Bliss took photos of Mr. Walker's injured neck and knee areas." ¶43 "Mr. Walker sat in the chair while Bliss had something else on her mind other than booking Mr. Walker. She called for Deputy Watts and continued to stand with her hands on her hips talking to Mr. Walker." ¶62 "Watts and Bliss then deploy a Taser while Mr. Walker is compliant sitting down." Both were "acting as a team." *Lee v. Town of Estes Park, Colo.*, 820 F.2d 1112, 1115 (10th Cir. 1987).

### COUNT III BLISS FAILURE TO INTERVENE

Neither does the defendant Bliss argue that she cannot commit a failure to

---

risk of injury or death. In short, the hazardous environment that Mr. Waterhouse created was a key component of the risk" *Id.* at 1225.

[6] The use of force lasted approximately 10 minutes. In *Fogarty v. Gallegos*, 523 F.3d 1147 (10th Cir. 2008), the use of force lasted 3 – 5 minutes. *Id.* at 1161. It was an issue of fact when the district court found that the officer was present for the duration of the use of force which supported a "conclusion that [the officer] had the opportunity to prevent [the plaintiff's] injuries." *Id* at 1164.

intervene when she also is a participant in the Constitutional violation of the use of force. Defense counsel claims that because Watts suddenly lunged at Mr. Walker and used force there was no opportunity for Bliss to stop Watts from that initial action. But that is not the end of the duty to intervene. The duty to intervene continues during the entire use of force incident. *See Ross v. Willis*, 2021 WL 3500163, at *15 (S.D.N.Y. Aug. 9, 2021) (denying summary judgment on failure to intervene claim where the defendant-officers "were in easy reach of" the assaulting officer). Whether Bliss approved or invited the use of force is one thing. Whether Bliss could have attempted to stop the initial use of force is another. And then it is another to say Bliss could not have intervened at any point during the ongoing use of force by Watts – which clearly Bliss did interject herself but in a bad way by participating in the use of force by verbal and drawing her Taser.[7] *See Figueroa v. Mazza*, 825 F.3d 89 (2d Cir. 2016) (nothing suggested officers could not have either physically intervened by getting out of the police car or at least called out to rebuke the assaulting officer). *Id.* at 108. Bliss had "an affirmative duty to intervene to protect the constitutional rights of [Mr. Walker] from infringement by [Watts] in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). *See Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994)

---

[7] The opportunity to intervene is fact-specific including the duration of the use of force. *See Figueroa* at 107-08 ("Among [many] considerations, of course, the assault's duration will always be relevant and will frequently assume great importance … The essential inquiry is whether, under the circumstances actually presented, an officer's failure to intervene permits a reasonable conclusion that he became a tacit collaborator in the unlawful conduct of another"); *Merrill v. Fell,* No. 23-7018, 2023 WL 8827665 (10th Cir. Dec. 21, 2023); *Chaney-Snell v. Young*, 98 F.4th 699, 722 (6th Cir. 2024).

("officer who is present but fails to intervene to prevent another law enforcement official from infringing a person's constitutional rights is liable if the officer had reason to know … that any constitutional violation has been committed by a law enforcement official and the officer had a realistic opportunity to intervene to prevent the harm from occurring").

### NO QUALIFIED IMMUNITY FOR USE OF FORCE, FALSE REPORTING, MALICIOUS PROSECUTION OR ABUSE OF PROCESS

Bliss and Watts knew they were providing false information in their reports. ¶79 "Elk County Deputies Bliss and Watts conspired to conceal, justify, or otherwise provide misleading false facts aimed at providing a false narrative justifying each defendant's actions as they described in their incident reports." Defendant Bliss and Watts caused Mr. Walker's continued confinement after legal process has begun. Causation is not broken if a probable-cause determination or prosecutor's charging decision is based on an officer's false statements or exclusion of exculpatory information in a probable-cause affidavit. *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017)   Nor is it broken if an individual, though not writing a probable-cause affidavit, "prevaricates and distorts evidence to convince the prosecuting authorities to press charges." *Pierce v. Gilchrist*, 359 F.3d 1279, 1293 (10th Cir. 2004).

The disorderly charge and the aggravated battery charge against Mr. Walker was thrown out by the judge overseeing the criminal prosecution.  That judge did not see what both Bliss and Watts claimed in their reports or in the video evidence.  ¶176. "The criminal trial judge stated that, as to Deputy Watts' claim that Walker lunged or moved towards Watts,  if Robert was a football lineman, the amount of movement

8

wasn't even enough to qualify for a false start penalty." Even if this Court views the video differently, it is telling that it is susceptible to different interpretations. If that judge saw it that way and dismissed charges, so too a jury. Then the fact those dismissed charges were based upon false reporting of Watts and Bliss as stated in paragraphs 75-77. It is clearly established all "law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Vondrak v. City of Las Cruces,* 535 F.3d 1198, 1210 (10th Cir. 2008). It is clearly established that "using force on a suspect who was handcuffed, zip-tied, and had ceased resisting was excessive force" contrary to clearly established law. *Wilkins v. City of Tulsa,* 33 F.4th 1265, 1277 (10th Cir.2022). Watts was not "addressing split second decisions by law enforcement officers to protect themselves and the public." *Weigel v. Broad*, 544 F.3d 1143, 1155 (10th Cir. 2008). Watts was not witnessing a crime when he used force on Mr. Walker sitting in the chair. Watts was not effectuating an arrest when he used force. Mr. Walker was already "subdued" sitting with his hands handcuffed behind his back. To say that Watts was "provoked" is not a crime nor does it present a safety issue. It does not state a justification for any force. No force was justified to be inflicted upon Mr. Walker. "Police officers do not have the right to shove, push, or otherwise assault innocent citizens without any provocation whatsoever." *Clash v. Beatty,* 77 F.3d 1045, 1048 (7th Cir. 1996). A jury could find that all of Watts' actions were gratuitous and retaliatory.

A reasonable jury could find that Mr. Walker did not pose an immediate threat

9

to the safety of Watts pr Bliss when he used force upon Mr. Walker. Each defendant urges the Court to take defense counsel's word for it as to assertions of fact about what these individual defendants were motivated by and were thinking. Defendants, similar to rewriting a bad movie script, imagine a fictional alternative thoughts and scenarios – all of which the writers say merited his arrest, subsequent detention, and then force used upon him. But at this stage the script writers pitch for the rewrite is just that – they should be ignored. It is the allegations contained in the Complaint that count.[8] The defendant's script ignores any acknowledgment for the proposition that there was no probable cause to arrest Mr. Walker or justification for the use of force by defendant Watts or Bliss. None claim the law is unclear about making false statements or false reports that lead to an arrest or seek to justify use of force.

In characterizing their respective actions, the defendants kindly rewrite the plaintiff's Complaint allegations or simply ignore them altogether.[9] The defendant The law is clearly established and also meets the egregiousness standard. *See Mink v. Knox,* 613 F.3d 995, 1003-04 (10th Cir. 2010) ("It goes without saying that a government official may not base her probable cause determination on an unjustifiable standard, such as speech protected by the First Amendment."); *Worrell*

---

[8] Asserting a qualified immunity defense at this stage subjects each defendant to a more challenging standard of review because it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness. *See Hemry v. Ross,* 62 F.4th 1248, 1253 (10th Cir.2023).

[9] Defense counsel's statements about these individual defendants' motivations and state of mind are admissions, irrespective of whether any of the officers will later adopt any or all of his statements. These are "affirmative statements that a fact exists." *Wells Fargo Bank, N.A. v. Mesh Suture, Inc.,* 31 F.4th 1300, 1313 (10th Cir. 2022) ("statements in his pleadings were binding judicial admissions").

*v. Henry,* 219 F.3d 1197, 1212 (10th Cir. 2000) ("We have stated that any form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom"); *Turner v. Lotspeich,* 1996 WL 23195, at *2 (10th Cir. 1996) ("clearly established that an officer would violate a plaintiff's Fourth and Fourteenth Amendment rights by knowingly or recklessly making a false statement in an affidavit in support of an arrest or search warrant, if the false statement were material to the finding of probable cause"). The Kansas state judge ruled that Mr. Walker was not resisting and did not take any steps toward Watts – as Watts falsely reported. It is clearly established law that speech that does not constitute fighting words is protected and not a crime. The law of use of force or retaliatory arrest was clearly established prior to Mr. Walker's arrest. *See Douglass v. Garden City Cmty. Coll.,* 652 F. Supp. 3d 1329, 1345 (D. Kan. 2023). The "law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions … for speaking out." *Hartman v. Moore,* 547 U.S. 250, 256 (2006). "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *City of Houston v. Hill*, 482 U.S. 451, 462-63 (1987). An individual has the right to be free from a retaliatory arrest, even if supported by probable cause, when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been arrested. *Nieves at* 1727. At the time Mr. Walker was arrested, this constitutional right was clearly

11

established. "Qualified immunity does not protect an officer where the constitutional violation was so obvious under general well-established constitutional principles that any reasonable officer would have known the conduct was unconstitutional." *Rosales v. Bradshaw*, 72 F.4th 1145, 1157 (10th Cir. 2023); *Buck v. City of Albuquerque*, No. 1:04-cv-01000-WJ-DJS, 2007 WL 9734037, at *42 (D.N.M. Apr. 11, 2007) ("using force against law-abiding demonstrators for the purpose of interfering with their First Amendment rights was contrary to the established law"); *Irizarry v. City & Cnty. of Denver*, 661 F. Supp. 3d 1073, 1091 (D. Colo. 2023) (First Amendment prohibits "subjecting an individual to retaliatory actions for engaging in protected speech").

Even if defendants Bliss and Watts did not appreciate Mr. Walker's respective rebuffs, "merely arguing with police officers about the propriety of their conduct … falls within the speech exception to [the interference with public duties statute] and thus does not constitute probable cause to arrest someone for interference." *Gorsky v. Guajardo,* No. 20-20084, 2023 WL 3690429, at *8 n.16 (5th Cir. 2023)( (collecting cases where "where the interference consisted of physical obstruction or commands to act in a way that interfered with instructions made with legal authority"); *Freeman v. Gore*, 483 F.3d 404, 414 (5th Cir. 2007) (noting that arguing with officers is not an offense). "A person approached by law enforcement is entitled to ignore his interrogator and walk away." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). At the time of the events in question, it was clearly established that a police officer may not use force on Mr. Walker who is complying with a command. *See Newman v. Guedry*, 703 F.3d 757, 761-64 (5th Cir. 2012) (objectively unreasonable for officers to

12

...

injure a man whose "behavior [does] not rise to the level of active resistance"). While the "acts or omissions of no one employee may violate an individual's constitutional rights" the "combined acts or omissions of several employees acting under a governmental policy or custom may violate an individual's constitutional rights." *Crowson v. Washington Cnty. Utah,* 983 F.3d 1166, 1186 (10th Cir. 2020).

### COUNT VI ELK COUNTY SHERIFF, GILLETT, BLISS, AND WATTS

Mr. Walker sued each of the defendants under Section 1983 claiming that they had violated his due process rights under *Brady*. The Amended Complaint states: ¶8 "Despite having the witness statement, deputy statements, and the videos of the arrest and uses of force against Mr. Walker, indicating no probable cause, the County prosecutor charged him in EK-2023-CR-000029 under K.S.A. 21-6203 (Disorderly Conduct) stating Mr. Walker was "yelling and making a scene" which neither constitutes elements of a Disorderly Conduct charge. The prosecutor also charged Mr. Walker with Interference with Law Enforcement and Battery on Law Enforcement Officers which there was no probable cause." Mr. Walker was convicted of one charge in his underlying criminal case: misdemeanor interference with law enforcement. *Parker v. County of Riverside*, 78 F.4th 1109, 114 (9th Cir. 2023) (prejudice from conviction).

The Amended Complaint states: ¶97 "Trial counsel made a demand or demands for discovery in Mr. Walker's criminal case. Kansas law imposes a duty on the prosecution to produce discovery as soon as practicable after receiving a timely request from a defendant. Items in the possession, control or custody of the state includes items possessed by law enforcement. As a result, it is the policy of the

defendant prosecutor's office to immediately request all evidence from defendant Sheriff, including all evidence of defendant Watt's purported "pain" and bodily injuries referenced in the battery charge towards defendant Watts."

It is well established that a §1983 Brady due process claim may be asserted against a law enforcement officer based on that officer's failure to disclose favorable material to the prosecution. *See Whitlock v. Brueggemann,* 682 F.3d 567, 587-88 (7th Cir. 2012). *Beaman v. Freesmeyer,* 776 F.3d 500, 509 (7th Cir. 2015) (obligation to turn over exculpatory material has been "on the books since 1963"). The Watts medical history was suppressed. "All evidence" was requested there was no probable cause to arrest Mr. Walker. The defendant Sheriff does not dispute that there was no probable cause to arrest and detain Mr. Walker. An underlying constitutional violation occurred. A reasonable jury could find that the Elk County sheriff's department had unofficial policies or customs of failing to train deputies, inadequately staffing the sheriff's department with deputies such as Watts and Bliss. Further, a reasonable jury could conclude that the Sheriff's department acted with deliberate indifference to these failures and that these policies caused Mr. Walker's improper arrest, detention, and subsequent injuries from the improper use of force upon Mr. Walker. There was no meaningful Brady violation training. Untrained deputies then not only withheld exculpatory evidence both Bliss and Watts falsified their probable cause affidavits. The Sheriff was aware of these serious deficiencies in training.

WHEREFORE the defendants' motion to dismiss should be denied.

| | |
|---|---|
| I hereby certify that on the 26th day of March, 2025, I submitted the foregoing to the Clerk of the Court for filing through the CM/ECF system, which will send a notice of electronic filing to all counsel of record.<br>/s/Linus L. Baker | /s/Linus L. Baker<br>Linus L. Baker, KS 18197<br>6732 West 185th Terrace<br>Stilwell, KS  66085-8922<br>Telephone:  913.486.3913<br>Fax:             913.232.8734<br>E-Mail: linusbaker@prodigy.net<br>Attorney for the plaintiff |